# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION (MEMPHIS)

**CARL JOSEPH FULMER,**
Plaintiff, Pro Se

v.

**FEDERAL EXPRESS CORPORATION;**
**SEDGWICK CLAIMS MANAGEMENT**
**SERVICES, INC.;**
**SEDGWICK SIU, INC.;**
**INDEMNITY INSURANCE COMPANY**
**OF NORTH AMERICA;**
**GENEX SERVICES, LLC / ENLYTE;**
**COVENTBRIDGE GROUP;**
**SELECT MEDICAL CORPORATION**
**d/b/a SELECT PHYSICAL THERAPY;**
**ORTHO ONE SPORTS MED &**
**ORTHOPEDICS, PLLC;**
**DR. JEFFREY A. DLABACH,**
**individually;**
**McDONALD KUHN, PLLC;**
**STEPHEN P. MILLER, individually;**
**TRACIE HARRIS, individually;**
**TAMME WALLIS, individually;**
**JENNIFER RAMOS, individually;**
**MARCEY ATKINS-BURKS, individually;**
**SHANNON MAYHUE, individually;**
**KENNETH WOODARD JR., individually;**
**LINDA SHEARER, RN, individually;**
**TYLER CANON, individually;**
**KAOLEE MOUA, individually;**
**DEBORAH K. POWELL, individually;**
**CITY OF VERNON, ALABAMA;**
**MAYOR GLEN CRAWFORD,**
**individually;**
**DAVIS EAVES, individually and in official**
**capacity;**
**BARRY CARRUTH, individually;**
**DAVID SULLIVAN, individually;**
**MATTHEW MORRIS, individually;**

RECEIVED

MAY 0 4 2026

Wendy R Oliver, Clerk
U.S. District Court
W.D. OF TN, Memphis

Case No. _____

)

**UNIFIED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF**

Civil RICO — 18 U.S.C. § 1964
42 U.S.C. §§ 1983, 1985
CFAA — 18 U.S.C. § 1030
Wiretap Act — 18 U.S.C. § 2511
SCA — 18 U.S.C. §§ 2701-07
18 U.S.C. § 2261A — Interstate Stalking
OSHA — 29 U.S.C. § 660(c)
First, Fourth & Fourteenth Amendments

**JURY TRIAL DEMANDED**

**LAMAR COUNTY, ALABAMA;**
**MARTIN GOTTWALD, individually;**
**STRAWBRIDGE, STRAWBRIDGE &**
**STRAWBRIDGE, LLC;**
**RONALD H. STRAWBRIDGE JR.,**
**individually;**
**ANDREW HAMLIN, individually;**
**CARLYLE NOE, individually;**
**and DOES 1-19,**

Defendants.

## UNIFIED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

## I. INTRODUCTION

Plaintiff Carl Joseph Fulmer, appearing Pro Se, brings this action against thirty-four named defendants — a coordinated criminal enterprise of corporate, medical, legal, and government actors — who systematically suppressed a legitimate workplace injury claim, manipulated medical records, conducted nearly five years of drone surveillance and electronic harassment across twenty states, obstructed federal and state investigations, and engaged in a prolonged campaign of retaliation that has left Plaintiff and his wife in temporary and intermittent housing across multiple states, without stable employment or resources.

On November 10, 2021, Plaintiff emailed Frederick W. Smith, CEO of Federal Express Corporation, describing his workplace shoulder injury and the improper handling of his claim. Within twenty-four hours, FedEx's Legal Division was activated. Within thirty-five days, a pre-arranged false medical diagnosis was used to deny the claim. The retaliation that followed has spanned nearly five years, twenty states, multiple federal agencies, and has involved the Vernon, Alabama Police Department — a four-officer department in a city of 1,200 people whose investigator admitted any corporate surveillance operation in town would 'come through him.'

Plaintiff was born in Vernon, Alabama, where his mother is buried. She passed on July 31, 2021. Plaintiff relocated to Memphis shortly after her passing to start over and to spend time with his in-laws. He sustained his workplace injury within months of his arrival. Rather than receive proper care, he encountered a pre-activated corporate suppression machine. He is now effectively displaced, living in temporary and intermittent housing, and brings this action seeking to hold every actor in this criminal enterprise accountable.

## II. JURISDICTION AND VENUE

1. Subject matter jurisdiction: 28 U.S.C. § 1331 (federal question); § 1343(a)(3)-(4) (civil rights); § 1367 (supplemental jurisdiction over state claims).

2. Diversity jurisdiction: 28 U.S.C. § 1332 — Plaintiff is a Mississippi citizen; primary Defendants are citizens of Tennessee, Delaware, and Pennsylvania; amount in controversy exceeds $75,000.

3. Venue: W.D. Tennessee under 28 U.S.C. § 1391(b)(1) and (b)(2) — Federal Express Corporation and Sedgwick Claims Management Services are headquartered in Memphis; the workplace injury, fraudulent medical evaluations, workers' compensation proceedings, and legal obstruction all arose in Memphis; McDonald Kuhn, PLLC is at 5400 Poplar Avenue, Memphis. RICO venue under 18 U.S.C. § 1965(a).

4. Plaintiff filed a Notice of Claim against the City of Vernon, Chief Davis Eaves, Asst. Chief Carruth, and Investigator Sullivan pursuant to Ala. Code § 11-47-23, satisfying the municipal pre-suit notice requirement.

### III. PARTIES

#### *Plaintiff*

**Carl Joseph Fulmer, Pro Se** — PO Box 18, Hernando, Mississippi 38632. BSBA, University of Alabama; MPA (3.7 GPA), Arkansas State University; MSIT (4.0 GPA), Columbia Southern University, graduated 2024 — maintaining academic excellence throughout the period of harassment described herein. Licensed real estate broker in Mississippi and Alabama. Appears pro se.

#### *A. The Criminal Enterprise — Ownership Structure*

Before identifying individual defendants, Plaintiff describes the criminal enterprise within the meaning of 18 U.S.C. § 1961(4). This enterprise is an association-in-fact of corporations, limited liability companies, professional entities, and individuals operating under common direction and control. Plaintiff expressly alleges that Defendants' use of subsidiary entities, assumed names, and layered corporate structures — including but not limited to Sedgwick SIU, Inc. (formerly Sedgwick Factual Photo, Inc.), Enlyte, Coventry Workers' Comp Services, Mitchell International, CoventBridge Group, and upon information and belief York Risk Services Group — constitutes an intentional effort to obscure unified direction and control, and does not shield any Defendant from liability under 18 U.S.C. § 1964.

The criminal enterprise is controlled by a consortium of global private equity firms. The Carlyle Group (NASDAQ: CG), headquartered at 1001 Pennsylvania Avenue NW, Washington, DC 20004, is Sedgwick's majority and controlling shareholder, having made its initial investment of $6.7 billion in 2018 and maintaining control through a November 2024 recapitalization valuing Sedgwick at $13.2 billion. Stone Point Capital LLC, a Greenwich, Connecticut private equity firm, is a strategic minority shareholder and the architect of the 'managed care' vertical that includes Enlyte — the parent brand consolidating Genex Services (medical case management), Mitchell International (claims data and scoring), and Coventry Workers' Comp Services (PPO network control). Altas Partners committed $1 billion in equity in November 2024, specifically designated for acquisitions and technology including AI-based counter-fraud surveillance infrastructure. Sedgwick's own reporting documents a £41 million 'saving' from AI-based counter-fraud technology — the same technological infrastructure Plaintiff alleges was deployed for forensic monitoring, digital interference, and directed energy surveillance operations against him. This criminal enterprise services not

only FedEx, but upon information and belief Amazon, Walmart, Target, major airlines, and substantially all Fortune 100 and 500 corporations, as well as governmental entities — systematically suppressing workers' compensation claims across its entire client base.

### B. Corporate Enterprise Defendants

**1. Federal Express Corporation (FedEx)** — Delaware corporation, 942 South Shady Grove Road, Memphis, TN 38120. Employed Plaintiff at SE Input facility, Memphis International Airport. Registered agent: Corporation Service Company, 2908 Poston Avenue, Nashville, TN 37203.

**2. Sedgwick Claims Management Services, Inc.** — Tennessee corporation, 8125 Sedgwick Way, Memphis, TN 38125. Third-party administrator for FedEx workers' compensation. Directed claim denial and coordinated false medical diagnoses. Majority-owned and controlled by The Carlyle Group. Registered agent: Corporation Service Company, 2908 Poston Avenue, Nashville, TN 37203.

**3. Sedgwick SIU, Inc.** (formerly Sedgwick Factual Photo, Inc.) — Active Tennessee for-profit corporation, Control Number 000641133. Principal office: 8125 Sedgwick Way, Memphis, TN 38125. Surveillance and investigation arm of the criminal enterprise. Utilizes the viaOne internal hub to log real-time surveillance data. David McVey, Chief Pilot Drone Operations, fourteen years at EFI Global, is upon information and belief the drone operations coordinator. Registered agent: Corporation Service Company, 2908 Poston Avenue, Nashville, TN 37203.

**4. Indemnity Insurance Company of North America (IICNA)** — Upon information and belief, IICNA is not a legitimately chartered insurance company in Pennsylvania or any other state in the traditional sense. Plaintiff alleges that Federal Express Corporation, having exhausted prior insurance carriers due to the volume and severity of claims at the Southeast Input facility and other high-injury locations, arranged through Sedgwick's network for a captive or quasi-captive insurance vehicle operating under the IICNA name, with registration maintained across Tennessee, Pennsylvania, and Kentucky to obscure its true nature as a corporate-controlled claims suppression instrument rather than an independent insurance carrier. Documents in Plaintiff's possession support this allegation and are subject to production through discovery. Served: CT Corporation System, 300 Montvue Road, Knoxville, TN 37919.

**5. Genex Services, LLC / Enlyte** — Medical case management gatekeeper operating under the Enlyte parent brand controlled by Stone Point Capital. Provides field case managers who attend physician appointments to 'influence' return-to-work determinations. Linda Shearer, RN, Genex case manager, told Plaintiff his referral to Dr. Dlabach came from 'way up.' Registered agent: CT Corporation System, 300 Montvue Road, Knoxville, TN 37919.

**6. CoventBridge Group** — The world's largest provider of private investigative services, operating as a subcontractor to Sedgwick. Jointly named with Sedgwick in Azzarmi v. Neubauer et al., confirming operational partnership. Served through registered agent in state of formation.

4

**7. Select Medical Corporation d/b/a Select Physical Therapy** — Operated on-site athletic training at FedEx Memphis hub. Served: CT Corporation System, 300 Montvue Road, Knoxville, TN 37919.

**8. Ortho One Sports Med & Orthopedics, PLLC** — Tennessee PLLC, SOS Control Number 000706914, 99 Market Center Drive, Collierville, TN 38017. Dr. Dlabach is registered agent and owner.

**9. Dr. Jeffrey A. Dlabach** — Licensed Tennessee physician. Issued false arthritis diagnosis to support claim denial. Three shifting diagnoses documented. Dr. Scott Ferguson, a 35-year radiologist with Arkansas practice and Tennessee hospital privileges, confirmed complete absence of arthritis and stated Dlabach 'is getting paid.' Served at 99 Market Center Drive, Collierville, TN 38017.

**10. McDonald Kuhn, PLLC** — Memphis law firm, 5400 Poplar Avenue, Suite 330, Memphis, TN 38119. Simultaneously represented FedEx, Sedgwick, and IICNA without disclosure, violating Tennessee RPC Rule 1.7.

**11. Stephen P. Miller** — Attorney, McDonald Kuhn PLLC. Sued individually. Coordinated false medical opinions, isolated Plaintiff from all contacts, and maintained prior collegial relationship with TBWC mediator Nina F. Harris. Email: smiller@mckuhn.com.

### C. Individual FedEx/Sedgwick Defendants

**12. Tracie Harris** — FedEx SE Input supervisor/manager, tracie.harris@fedex.com. Ordered Plaintiff back to SE Input under termination threat despite documented injury. Refused physician access. Served via FedEx Legal Dept., 942 South Shady Grove Road, Memphis, TN 38120.

**13. Tamme Wallis** — WC Claims and Litigation Advisor, FedEx Risk Management/Legal Division, 3620 Hacks Cross Road, Building B, 2nd Floor, Memphis, TN 38125. Contacted Plaintiff five days after CEO email presenting as helpful while routing claim to denial mechanism.

**14. Jennifer Ramos** — Senior Manager, Human Capital Management, FedEx Express. Responded same day as CEO email: 'Your email below to Mr. Smith was forwarded to me.' Activated Legal Division. Served via FedEx Legal Dept.

**15. Marcey Atkins-Burks** — FedEx Safety Advisor, meatkins@fedex.com. Signed FedEx's TOSHA self-report closing Plaintiff's safety complaint in six weeks without interviewing Plaintiff.

**16. Shannon Mayhue** — FedEx HCMP, sgmayhue@fedex.com. CC'd on Plaintiff's November 10, 2021 formal complaint email chain.

**17. Kenneth Woodard Jr.** — Athletic Trainer (MS, LAT, ATC, PES, CES), Select Physical Therapy at FedEx hub. Plaintiff possesses Woodard's business card confirming his identity and credentials (Exhibit). His own 11/5/2021 records document injury, spasms, pain 8/10, referral to MD, and 'Computer Sys down' on transmission day. Practiced outside scope of license as an athletic trainer rather than a licensed physical therapist.

5

**18. Linda Shearer, RN** — Genex/Enlyte case manager, 901-255-4893. Told Plaintiff referral to Dlabach came from 'way up' — direct admission of pre-arranged denial. Asked personal questions about hobbies, children — consistent with intelligence gathering for surveillance purposes.

**19. Tyler Canon** — Genex/Enlyte case manager. Involved in coordination of Plaintiff's medical case management and referral process. Upon information and belief, has direct knowledge of Genex's systematic practices of directing injured workers to denial-oriented physicians.

**20. Kaolee Moua** — Sedgwick Claims Examiner, kaolee.moua@sedgwick.com. Signed December 15, 2021 denial letter. Miller and Dlabach CC'd same day — before Plaintiff's final appointment. Moua specifically ensured Plaintiff accessed their electronic portal and clicked an acceptance button, engineering Plaintiff's electronic consent to the denial through a process designed to obscure what Plaintiff was agreeing to.

**21. Deborah K. Powell** — Sedgwick Claims Team Lead, deborah.k.powell@sedgwick.com. Formally opened and assigned claim November 12, 2021 — two days after CEO email, at direction of FedEx Risk Management. Upon information and belief, Plaintiff's notes identify a contact named 'Christy' in connection with Powell's office or team whose identity is subject to confirmation through discovery.

### D. Government/Official Defendants

**22. City of Vernon, Alabama** — Monell liability through final policymakers. Served: Vernon City Hall, Vernon, AL 35592.

**23. Mayor Glen Crawford** — Appointed Davis Eaves despite limited experience. Received Notice of Claim and complaint, took no action. Ratified misconduct. Plaintiff has body camera footage containing exact quotes from interactions with Crawford or his office — specific quotes to be inserted upon extraction from preserved video.

**24. Chief Davis Eaves** — Officer ID 1011/1051. Final VPD policymaker. Key documented acts: (a) armed restaurant confrontation May 10, 2022 at Los Charos Restaurant, hand on service weapon, told Plaintiff to keep mouth shut — Brandon Cockerham witness; (b) directed Cockerham intelligence operation on May 11, 2022; (c) received Sullivan's post-interview body cam call — 'Yeah, we got him'; (d) asked if Cockerham had 'thrown him under the bus'; (e) appeared at DA's office and refused to view Plaintiff's drone video; (f) coordinated with FAA to neutralize Plaintiff's federal complaint through Sullivan; (g) son also employed at VPD — nepotistic entrenchment; (h) multiple additional meetings with Plaintiff in which specific threats and admissions were made, documented on body cam footage with exact quotes to be inserted upon extraction. Served at VPD, Vernon, AL.

**25. Asst. Chief Barry Carruth** — Officer ID 1021. Told Plaintiff from outset he would get no help. Expelled Plaintiff from VPD building when Plaintiff disclosed IC3/FBI filing, stating it 'made the department look bad.' Made specific admissions during City Hall encounters documented on body cam footage with exact quotes to be inserted upon extraction. Fabricated Water Department complaint. Failed to run Tennessee surveillance vehicle tag — that body cam clip is missing from all FOIA productions — and failed to run

6

Shelby County tag. No documentation of any of these incidents in any FOIA production. Served at VPD.

**26. Investigator David Sullivan** — Officer ID 1091. Twenty-four documented acts including: conducted Cockerham intelligence operation on May 11, 2022 — lied about recording while body cam ran, returned to patrol car and called Eaves: ',,,he knows... he thinks he has been mental four or five years' / Eaves: 'did he (Cockerham) throw me under the bus? (worried about his actions at restaurant)' / Sullivan: 'Naw naw"; on August 31, 2022 Sullivan called FAA investigator John Vaughn at Chief's direction; mocked Plaintiff's complaints to FAA during active investigation; called Plaintiff's son in California under death-notification pretext and questioned him despite parents' explicit request; stated any surveillance operation in Vernon would 'come through him'; disclosed during recorded interview he 'worked federal cases and knows all the people'; dismissed witness as 'a homosexual pedophile with a demon'; called for armed backup on private property over Plaintiff holding a cordless drill. Plaintiff possesses body cam footage containing additional exact quotes from multiple Sullivan interactions — specific quotes to be inserted upon extraction. Served at VPD.

**27. Officer Matthew Morris** — Badge #23. Responded to Plaintiff's call, personally observed a small aircraft with flashing red lights approximately 150-200 feet above ground, called it a 'plane,' was shown through Plaintiff's phone camera how to identify drones, personally witnessed the drone through the lens confirming blinking lights and drone characteristics, and filed no report. The incident appears in no FOIA production. Served at VPD.

**28. Lamar County, Alabama** — Monell liability through Gottwald. Served: Lamar County Courthouse, Vernon, AL.

**29. Sheriff Martin Gottwald** — Provided Plaintiff a USB drive to collect evidence on his own request. When Plaintiff returned with the evidence-loaded USB — containing approximately forty drone videos — Gottwald refused to look at it, stated he was done, and departed — witnessed by the LCSO secretary and a deputy. Refused FOIA to identify the jail officer who confirmed drone sightings at the county jail. Retaliatory motivation from prior bank encounter documented. Served: LCSO, Vernon, AL.

**30. Strawbridge, Strawbridge & Strawbridge, LLC** — Simultaneously represented City of Vernon and Lamar County Sheriff's Office — undisclosed dual representation creating a direct conflict of interest. Ronald H. Strawbridge Jr. is lead attorney; Audrey Oswalt Strawbridge, his wife and law partner, previously represented Plaintiff in real estate transactions during his prior period as a licensed real estate agent and contractor in Vernon — a direct prior attorney-client relationship with Plaintiff that was not disclosed when the firm assumed an adverse position against him. Across four FOIA requests spanning three years, Strawbridge withheld body camera footage until the fourth and final request, producing it with a letter stating 'that's it,' while still withholding numerous other documented incidents. In a March 2025 FOIA response, Strawbridge stated all records had been produced at his office on March 18, '2015' — a date a decade before any of the events at issue — constituting a materially false statement in an official FOIA response. Plaintiff left Vernon under duress to find drone-safe areas near restricted airspace and military installations, and documented

7

continued surveillance infractions across twenty states throughout his travels. Served: 44695 Highway 17 North, PO Box 522, Vernon, AL 35592.

**31. Ronald H. Strawbridge Jr.** — Sued individually for facilitating FOIA violations, making materially false statements in FOIA responses, and dual representation without disclosure. His failure to disclose Audrey Oswalt Strawbridge's prior attorney-client relationship with Plaintiff constitutes an additional ethical violation subject to referral to the Alabama State Bar.

**32. DA Andrew Hamlin** — 24th Judicial Circuit, Lamar and Fayette Counties. Received Plaintiff's full briefing and a copy of FedEx interrogatories. Took no action. Was present when Davis Eaves arrived at his office and refused to view Plaintiff's drone video. Maintained a two-county prosecutorial safe zone ensuring no local criminal avenue was available to Plaintiff. Served: DA's Office, Vernon, AL.

**33. Carlyle Noe** — Vernon attorney. Landlord of Brandon Cockerham's wife and Cockerham's personal friend. When Plaintiff sought legal representation following Chief Eaves' armed restaurant confrontation, Noe's first substantive inquiry — before Plaintiff had described any facts of the case — was whether Plaintiff had mental health issues. This pre-formed inquiry is consistent with Noe having been informed of Plaintiff's situation through Cockerham before the meeting began. Plaintiff received no legal assistance. Noe is sued for denial of access to courts and participation in the broader pattern of using mental health narratives to suppress Plaintiff's complaints. Served at his Vernon, Alabama law office.

**34. Does 1-19** — Unknown drone operators, CoventBridge subcontractors, and unknown actors who accessed Plaintiff's electronic devices. Also includes The Carlyle Group and Altas Partners to the extent their direction and control of the enterprise renders them members of the association-in-fact, subject to formal amendment upon discovery. Plaintiff's investigations have identified a location on Watertank Hill Road in Lamar County, Alabama as a potential staging area for ground support operations — subject to verification through discovery.

## IV. STATEMENT OF FACTS

### A. The Workplace Injury and the CEO Email — November 2021

35. Plaintiff relocated to Memphis in the summer of 2021 following the passing of his mother on July 31, 2021, seeking a fresh start and time with his in-laws. He was hired by FedEx on October 8, 2021 and assigned to Southeast Input (SE Input) — an outdoor, antiquated, high-injury facility off the Memphis International Airport tarmac where workers throw cargo weighing up to 90+ pounds from below-waist to overhead height. The facility had been previously shut down for injuries and reopened for holiday overflow.

36. Plaintiff sustained a left shoulder injury on November 3, 2021. He was transferred to Live Input by a filling-in manager who acknowledged SE Input's hazards for older workers. Despite documented injury knowledge, Defendant Tracie Harris twice ordered Plaintiff back to SE Input under threat of termination. The second forced return caused Plaintiff's left shoulder to lock completely overnight.

8

37. Plaintiff texted Harris requesting to see a doctor. Harris refused by text and directed him to the Select Physical Therapy Athletic Trainer. Plaintiff walked three-quarters of a mile in severe pain to reach the training room. Kenneth Woodard Jr. documented muscle spasms, pain rated 8/10, referred Plaintiff to a physician, and noted 'Computer Sys down' on the day records were due to Sedgwick. Woodard's own file states 'FedEx is hiding injuries again.'

38. On November 10, 2021, Plaintiff emailed CEO Frederick W. Smith at fwsmith@fedex.com. That same evening Jennifer Ramos responded: 'Your email below to Mr. Smith was forwarded to me.' Within forty-eight hours Deborah K. Powell of Sedgwick formally assigned claims examiner Kaolee Moua. Within five days, Tamme Wallis of FedEx's Risk Management/Legal Division contacted Plaintiff. The CEO email triggered the criminal enterprise's claim suppression mechanism within twenty-four hours.

39. Upon information and belief, FedEx's prior workers' compensation insurance carriers declined to renew coverage due to the volume and severity of claims at the Southeast Input facility and similar high-injury locations. Plaintiff alleges that Indemnity Insurance Company of North America was arranged through Sedgwick's network as a captive or quasi-captive insurance vehicle — registered across multiple states including Tennessee, Pennsylvania, and Kentucky — specifically to manage and suppress FedEx workers' compensation liability outside the scrutiny of traditional insurance regulation. Documents in Plaintiff's possession support this allegation.

### B. The False Diagnosis — The Pre-Arranged Denial

40. Linda Shearer of Genex directed Plaintiff to Dr. Jeffrey Dlabach of Ortho One in Collierville, Tennessee, telling Plaintiff the referral came from 'way up.' Kaolee Moua subsequently ensured Plaintiff accessed Sedgwick's electronic portal and clicked an acceptance button, engineering Plaintiff's electronic consent to the denial through a portal process designed to obscure what Plaintiff was agreeing to. Dr. Dlabach issued at least three shifting diagnoses, ultimately attributing Plaintiff's condition entirely to arthritis before Plaintiff's final appointment.

41. Dr. Scott Ferguson, a radiologist with over 35 years of practice spanning Arkansas and Tennessee, reviewed Plaintiff's shoulder imaging and confirmed the complete absence of arthritis, stating Dr. Dlabach 'is getting paid.' Dr. Ferguson and Dr. Trent Pierce, then-Chairman of the Arkansas State Medical Board, lived across the street from one another in West Memphis, Arkansas. On February 4, 2009, a bomb concealed in a spare tire detonated in Dr. Pierce's driveway — directly across the street from Dr. Ferguson's home where his three children lived — costing Dr. Pierce his left eye. The bomber was convicted and sentenced to life in federal prison; Dr. Pierce was awarded $122.5 million in civil damages. Dr. Ferguson's refusal to return Plaintiff's subsequent calls is consistent with the response of a man who watched a car bomb detonate across the street from his children and understands the cost of challenging connected physicians in this community. He will be subpoenaed as a material witness upon commencement of discovery.

42. The December 15, 2021 denial letter, signed by Kaolee Moua, was CC'd to Stephen P. Miller and Dr. Dlabach on the same day it was issued — before Plaintiff's final scheduled appointment — establishing the pre-arranged nature of the denial.

### C. The TBWC Proceedings — Corrupted Mediation

9

43. Plaintiff filed a Petition for Benefit Determination with the TBWC, State File No. 85578-2021. The assigned mediator, Nina F. Harris, had a prior collegial relationship with Miller — documented in her own January 26, 2022 email to Miller expressing desire to 'look forward to working with you again in the future,' violating TCA § 50-6-236.

44. Following Plaintiff's service of interrogatories on McDonald Kuhn, those interrogatories were overnight deleted from Plaintiff's Dropbox account. A subsequent unauthorized access to Plaintiff's email originated from Columbus, Ohio — location of a Sedgwick operations hub. Plaintiff's Google Voice account (joefulmerinc), used exclusively for legal proceedings including contacting attorneys and serving interrogatories, was subsequently hacked and all files and records deleted — with the exception of one. Plaintiff had called Miller using this number.

45. In 2020 and 2021 combined, only four workers' compensation cases — two per year — were resolved through the TBWC court for FedEx, despite the company employing an estimated 60,000+ seasonal workers at the Memphis hub during peak seasons, with year-round hiring and turnover suggesting upwards of 100,000 workers cycling through annually over twenty years of operations. Plaintiff documented this in his August 14, 2020 letter to US Attorney Joseph C. Murphy — before his own injury. Upon Plaintiff's subsequent inquiry, this data was removed from the TBWC's public website — spoliation of a public record.

46. Plaintiff withdrew his claim on June 21, 2022 under documented duress (timestamped 4:06 PM through official TBWC web form): 'I stopped my claim under duress as my family and I were being hacked, harassed...' FedEx paid the filing fee to close the case. The presiding judge, Hon. Deana C. Seymour, questioned this payment and requested Plaintiff testify. Plaintiff was never properly notified through required certified mail. Judge Seymour retired shortly thereafter.

### D. The Vernon Police Department — Nearly Five Years of Coordinated Suppression

47. Plaintiff left Memphis and relocated to Vernon, Alabama in late 2021 — in part to escape the surveillance that had already begun, and in part to protect his in-laws from further exposure to the operation. He reported drone surveillance to VPD almost immediately upon arrival. Multiple witnesses independently observed drone activity and were never interviewed or documented: Krystal (duplex neighbor) who spontaneously confirmed a large drone; a male resident dismissed by Sullivan as 'a homosexual pedophile with a demon'; Paul Barham, a pastor and former subcontractor with independent drone footage at his own property — named in a written report, never contacted; and Officer Matthew Morris, who personally witnessed a drone, was shown how to identify it through a phone camera, personally saw it through the lens, and filed no report. The Morris incident — an officer personally witnessing drone activity and filing no report — is conspicuously absent from all four FOIA productions.

48. Plaintiff had multiple documented interactions with Chief Davis Eaves, Asst. Chief Carruth, and Investigator Sullivan. At the DA's office, Eaves appeared and refused to view Plaintiff's drone video. At City Hall, Carruth made specific admissions during an encounter documented on body cam footage. Don Dollar, City Clerk, witnessed Plaintiff's real-time drone video — including footage of a drone departing from above City Hall — and

redirected Plaintiff to the DA's office rather than calling police, then apparently alerted Eaves who arrived at the DA's office within minutes. Body cam footage from these interactions contains exact quotes that Plaintiff will extract and insert prior to final submission.

49. On May 10, 2022, Chief Davis Eaves entered Los Charos Restaurant where Plaintiff was dining with Brandon Cockerham, approached with his hand on his service weapon, and told Plaintiff to keep his mouth shut. Cockerham witnessed the entire confrontation. No documentation of this incident appears in any FOIA production.

50. The following day, May 11, 2022, Eaves and Sullivan determined to contact Cockerham — Plaintiff's insurance agent and longtime friend — 'to see what he thought about Joe's condition.' Sullivan went to Cockerham's office. Cockerham asked: 'Are you recording this?' Sullivan said no. The body camera was running. Sullivan pushed a mental instability narrative. Sullivan returned to his patrol car with camera still running and called Eaves. Sullivan: 'Yeah, we got him.' Eaves: '[did he] throw him under the bus?' Sullivan: 'Naw naw, we got him.' This government recording was partially produced on the fourth and final FOIA request only — after three prior denials — with Strawbridge stating 'that's it.' Critical footage remains missing including the complete Sullivan-to-Eaves post-interview call.

51. Sullivan obtained Plaintiff's son's phone number under a death-notification pretext — stating words to the effect of 'let me have your son's number and if something happens to both of you I can call and let him know' — then called the son in California and questioned him about his parents. Plaintiff and his wife had explicitly asked VPD to keep their son out of the matter. This is witness tampering under 18 U.S.C. § 1512(b) and interstate stalking under 18 U.S.C. § 2261A.

52. Sullivan's own August 31, 2022 handwritten notes state he was directed by Chief Davis Eaves to personally call FAA investigator John Vaughn. Sullivan also mocked Plaintiff's complaints to FAA personnel during an active investigation. Vaughn subsequently told Plaintiff he could not act without local police cooperation, that a file on Plaintiff existed at the FAA, and that 'someone in that department does not like you.' The FAA closed Plaintiff's investigation — a direct product of VPD's poisoning of the federal process.

53. During a long recorded interview, Sullivan disclosed: (1) 'I used to work federal cases and know all the people' — the federal contact network used to neutralize FBI, FAA, and OSHA complaints; and (2) any surveillance or insurance investigation operation in Vernon would 'come through him' as the designated local point of contact — a near-admission of his role as the criminal enterprise's law enforcement node. Sullivan also told Plaintiff he 'needed the Lord' during the official interview, and told people throughout Vernon that 'this isn't the same happy Joe I used to know' — systematic community-wide defamation under color of law.

54. Sheriff Gottwald personally provided Plaintiff a USB drive to collect evidence on his request. When Plaintiff returned with the evidence-loaded USB — containing approximately forty drone videos — Gottwald refused to look at it, stated he was done, and departed — witnessed by the LCSO secretary and a deputy. The LCSO secretary had previously acknowledged seeing drones 'crossing toward Sulligent' approximately a year prior.

11

55. Plaintiff maintained over 300 videos documenting drone activity in Vernon and Lamar County alone, with additional footage from Tuscaloosa, Lowndes, Lee, and Monroe counties in Mississippi. At minimum six drones surrounded Plaintiff's locations every single night during his time in Vernon. Plaintiff also documented drone activity near runways and military installations including Columbus Air Force Base — where drones followed him to the gate — and approximately 100 additional videos near restricted airspace, demonstrating the enterprise's willingness to operate in controlled and restricted zones to maintain continuous surveillance pressure.

### E. The Interstate Surveillance Network — Not Local, But National

56. The criminal enterprise that surveilled Plaintiff in Vernon, Alabama is not the Vernon Police Department — VPD was merely the local protection node. The actual surveillance infrastructure is a national corporate network maintained by the same enterprise that services FedEx, Amazon, Walmart, Target, major airlines, and substantially all Fortune 100 and 500 corporations. Plaintiff drove sporadically — sometimes short distances, sometimes hundreds of miles — at varying times of day and night. Near dark, they would be there. No way the Vernon Police Department could have physically followed Plaintiff across twenty states and two thousand miles. The enterprise has a network operating throughout the country that deploys surveillance assets against claimants regardless of their geographic location. Plaintiff documented continued surveillance infractions across twenty states following his departure from Vernon, with a list of all twenty states preserved in his files. Drones surrounded every temporary location — rest stops, parking lots, rural areas — with the same operational precision observed in Vernon.

### F. The Directed Energy Incidents — Escalation to Physical Harm

57. Plaintiff and his wife have experienced a documented pattern of directed energy exposure across multiple states consistent with High Intensity Radiated Field (HIRF) interference from drone-mounted equipment: (a) Pigeon Forge/Gatlinburg, Tennessee — parked under a young oak tree, acorns were stripped from the tree crashing onto the vehicle roof simultaneously with a sealed water jug popping and Plaintiff feeling a physical surge — Plaintiff's Samsung phone circuit board was destroyed (Exhibit 504); (b) St. George, Utah — drone swarm surrounded Plaintiff's tent campsite during the July 4th weekend, Plaintiff urinated approximately one gallon that night consistent with documented microwave-induced diuresis from directed energy exposure, local police contacted and referred to Cedar City, video footage preserved; (c) Caledonia, Monroe County, Mississippi — sudden complete loss of vehicle power steering and brakes on a flat open road concurrent with approximately forty drones surrounding the vehicle — an off-duty deputy arrived, removed the gas cap and listened to confirm the fuel pump was operational, found no mechanical explanation, and was stumped alongside Plaintiff until the HIRF explanation became apparent — no fire, no fault code, vehicle restarted without issue the next morning; (d) I-55 rest area, Hernando, DeSoto County, Mississippi — nightly outdoor exposure producing chronic excessive urination and sleep disruption; (e) Cracker Barrel parking lot, 8000 Lowrance Road, Memphis, Tennessee — May 4, 2026, less than one mile from Defendant Tamme Wallis's FedEx office at 3620 Hacks Cross Road — massive stationary drone employing pulsed electromagnetic field causing magnetic window covers to actively pop in rhythmic pattern directly adjacent to Plaintiff's head position, video timestamped 20260504_015019 preserved in Plaintiff's

12

Google Drive. Plaintiff's wife has also experienced kidney discomfort consistent with directed energy exposure during periods of outdoor sleeping.

### G. The Criminal Enterprise — Full Corporate Structure

58. The criminal enterprise described herein is an association-in-fact within the meaning of 18 U.S.C. § 1961(4), controlled by The Carlyle Group (majority), Stone Point Capital LLC (strategic minority and managed care architect), and Altas Partners ($1 billion equity, November 2024, AI/surveillance technology focus). Together these entities direct a vertically integrated claims suppression machine that assigns injured workers to denial-oriented physicians through the Enlyte medical network, suppresses claims through coordinated medical and legal gatekeeping, deploys surveillance assets through Sedgwick SIU and CoventBridge, and uses local law enforcement relationships to neutralize federal complaints. Sedgwick previously paid $1.13 million to California's Division of Workers' Compensation for systematic utilization review violations — the same denial practices applied to Plaintiff. Sedgwick's December 2021 acquisition of JND Legal Administration added operational control over the class action administration mechanism used to manage settlements brought against Sedgwick itself. This same enterprise, upon information and belief, systematically suppresses workers' compensation claims for substantially all major corporate clients — representing millions of injured workers over decades of operation.

## V. CAUSES OF ACTION

### Count I — Civil RICO, 18 U.S.C. § 1964 — The Criminal Enterprise

59. Defendants constitute a criminal enterprise within the meaning of 18 U.S.C. § 1961(4) engaged in a pattern of racketeering including mail fraud (§ 1341), wire fraud (§ 1343), obstruction of justice (§ 1503), witness tampering (§ 1512), destruction of records in federal investigations (§ 1519), and computer fraud (§ 1030). The enterprise deliberately uses layered corporate structures, assumed names, and subsidiary entities to obscure unified direction and control. This does not shield any Defendant from liability. Plaintiff seeks treble damages, costs, and fees under § 1964(c).

### Count II — CFAA, 18 U.S.C. § 1030

60. Defendants accessed Plaintiff's computers, accounts, cloud storage, and USB devices without authorization, destroying legal files, interrogatories, and evidence. The deletion of interrogatories following service on McDonald Kuhn, unauthorized access tracing to Columbus, Ohio (Sedgwick hub), deletion of Plaintiff's Google Voice account (joefulmerinc) used exclusively for legal proceedings, and Quasar RAT infection of Plaintiff's USB drive constitute violations under § 1030(a)(2), (a)(5), and (g).

### Count III — Stored Communications Act, 18 U.S.C. §§ 2701-07

61. Defendants accessed Plaintiff's stored electronic communications without authorization.

### Count IV — Wiretap Act, 18 U.S.C. § 2511

62. Defendants intercepted Plaintiff's wire communications through jamming, diversion, and unauthorized monitoring.

### Count V — Interstate Stalking, 18 U.S.C. § 2261A

13

63. Defendants conducted a course of harassment across twenty states using drones, vehicles, directed energy equipment, and electronic surveillance — including contacting Plaintiff's son in California — causing substantial emotional distress, documented physical harm including microwave-induced diuresis, and reasonable fear for Plaintiff's and his family's safety.

### Count VI — First Amendment Retaliation, 42 U.S.C. § 1983 — Government Defendants

64. In direct response to Plaintiff's protected petitioning activity — police reports, FOIA requests, IC3/FBI complaints, FAA reports, OSHA filings, and correspondence with government officials — Defendants Davis Eaves, Carruth, Sullivan, Gottwald, and Hamlin built a false mental health dossier, physically threatened Plaintiff, expelled him from a government building, refused evidence, maintained a two-county prosecutorial safe zone, and coordinated with federal agencies to neutralize his complaints across nearly five years.

### Count VII — Civil Conspiracy, 42 U.S.C. § 1985(2) and (3) — All Defendants

65. Defendants conspired to deprive Plaintiff of access to courts, right to petition, and equal protection through the Cockerham body cam operation, Sullivan's FAA contact on Eaves' orders, Carruth's IC3 expulsion, Gottwald's evidence refusal, Hamlin's prosecutorial shield, Strawbridge's FOIA obstruction including dual representation and prior conflict with Plaintiff through Audrey Oswalt Strawbridge, and Noe's pre-informed refusal of legal assistance.

### Count VIII — OSHA Whistleblower Retaliation, 29 U.S.C. § 660(c) — FedEx

66. FedEx retaliated against Plaintiff for reporting workplace safety violations through claim denial, coordinated surveillance, and defamation. Marcey Atkins-Burks signed FedEx's TOSHA self-report that closed Plaintiff's safety complaint in six weeks without interviewing Plaintiff.

### Count IX — Fraud and Misrepresentation — All Corporate Defendants

67. Defendants made material false representations regarding Plaintiff's medical condition, independence of medical review, and legitimacy of the claim denial — including Moua's engineering of Plaintiff's portal acceptance — with knowledge of falsity and intent to deceive.

### Count X — Negligence and Gross Negligence — FedEx, Select, Ortho One, Genex

68. Each Defendant breached duties of care through forced return of an injured worker to a hazardous facility, deployment of an unlicensed practitioner, issuance of a false diagnosis, and pre-arranged referral to a denial-oriented physician.

### Count XI — Abuse of Process and Legal Malpractice — McDonald Kuhn and Miller

69. Miller's simultaneous undisclosed representation of FedEx, Sedgwick, and IICNA violates Tennessee RPC Rules 1.7 and 8.4. His use of legal process to orchestrate false medical opinions and facilitate coerced TBWC dismissal constitutes abuse of process.

### Count XII — Bad Faith Insurance — Sedgwick and IICNA

70. Sedgwick and IICNA denied Plaintiff's valid claim in bad faith without reasonable basis, violating TCA § 56-8-104 and applicable common law. Upon information and belief, IICNA's status as a captive or quasi-captive insurance vehicle renders its claim denials a

nullity and its retention of premiums without legitimate insurance risk assumption an additional fraud.

### Count XIII — Alabama Open Records Act — City of Vernon, Lamar County, Strawbridge, Gottwald, Davis Eaves, ALEA

71. Defendants willfully violated Ala. Code § 36-12-40 across four FOIA requests spanning nearly five years, withholding body camera footage across three requests before partial production on the fourth, producing false FOIA response statements including a reference to a 2015 date, and refusing to identify named government employees. ALEA accepted payment from Plaintiff for processing a records request, failed to produce any responsive records, and retained Plaintiff's funds — constituting unjust enrichment and conversion in addition to the Open Records Act violation. Upon information and belief, ALEA has a documented institutional pattern of blocking FOIA requests consistent with reporting by ProPublica and confirmed by Alabama Attorney General Opinion 2018-030.

### Count XIV — IIED — All Individual Defendants

72. The collective conduct of all individual Defendants — armed restaurant confrontation, son contact under death-notification pretext, nearly five-year mental health defamation campaign throughout Plaintiff's birth city and community, twenty-state drone surveillance and directed energy operations causing documented physical harm, and forcing Plaintiff and his wife into temporary and intermittent housing — constitutes extreme and outrageous conduct causing severe and ongoing emotional distress and physical harm to Plaintiff and his wife.

### Count XV — Declaratory and Injunctive Relief — All Defendants

73. Plaintiff seeks declaratory judgment that all conduct described herein violated his constitutional, statutory, and common law rights, and injunctive relief as set forth below.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Carl Joseph Fulmer, Pro Se, respectfully requests this Court:

- Enter a Temporary Restraining Order prohibiting all Defendants from: conducting any surveillance of Plaintiff or his wife by any means including drones, vehicles, directed energy equipment, or electronic monitoring; accessing or destroying any of Plaintiff's electronic devices, accounts, or files; destroying or altering any body camera footage, records, or communications relating to Plaintiff; and contacting Plaintiff's son, wife, or any witness for purposes of intelligence gathering or deterring cooperation;

- Issue a Preliminary and Permanent Injunction maintaining the above prohibitions;

- Award compensatory damages for: physical injury and untreated rotator cuff damage; denied workers' compensation benefits; lost wages and diminished earning capacity; costs of four FOIA requests spanning nearly five years; destruction of multiple electronic devices including Samsung phone (Exhibit 504); sale of paid-for vehicle following the Caledonia EFI event; loss of housing stability and costs of nearly five years of temporary and intermittent housing; documented physical harm from directed energy exposure including chronic sleep disruption and microwave-induced

diuresis affecting both Plaintiff and his wife; and all emotional and psychological harm to Plaintiff and his wife;

- Award treble damages under 18 U.S.C. § 1964(c);

- Award punitive damages against all individual Defendants;

- Issue a Declaratory Judgment that Defendants' conduct violated Plaintiff's rights under the First, Fourth, and Fourteenth Amendments, 42 U.S.C. §§ 1983 and 1985, 18 U.S.C. §§ 1030, 1512, 1519, 1964, 2261A, 2511, and 2701-07, 29 U.S.C. § 660(c), the Alabama Open Records Act, and Tennessee common law;

- Order immediate preservation of all body camera footage, claim files, drone flight logs, dispatch records, viaOne surveillance logs, and ESI relating to Plaintiff in all Defendants' possession;

- Order production of all VPD body camera footage depicting any interaction with or discussion of Plaintiff — including the May 11, 2022 Cockerham interview, the post-interview Sullivan-to-Eaves call, the Morris drone observation, the DA office incident, the Carruth City Hall incident, and all other documented interactions not yet produced;

- Order Gottwald to identify the Lamar County Jail officer who confirmed drone sightings and produce all related records;

- Order ALEA to return all fees collected from Plaintiff for records requests and to produce all responsive records;

- Order independent forensic examination of Plaintiff's USB drives and MacBook at Defendants' expense;

- Appoint a Special Master to audit claim denial practices of Sedgwick, Genex/Enlyte, and their medical network across FedEx's seasonal workforce, estimated at 100,000 workers annually over twenty-plus years of operations;

- Refer conduct of Defendant Miller to the Tennessee Board of Professional Responsibility and conduct of Defendants Strawbridge Jr. and Audrey Oswalt Strawbridge to the Alabama State Bar, including the undisclosed prior attorney-client relationship with Plaintiff;

- Refer body camera evidence to the United States Attorney for the Western District of Tennessee for review under 18 U.S.C. §§ 1512 and 1519;

- Award costs, attorney fees, and all other relief this Court deems just and proper;

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL CLAIMS SO TRIABLE.**

**VERIFICATION**

I, Carl Joseph Fulmer, appearing Pro Se, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief, filed in good faith, and that all factual contentions have evidentiary support or will likely have such support after a reasonable opportunity for discovery. Plaintiff

16

reserves the right to insert exact body camera quotes upon extraction from preserved video footage prior to final submission.

**Carl Joseph Fulmer**, Pro Se Plaintiff

PO Box 18, Hernando, Mississippi 38632

joefulmer@protonmail.com | 205.356.0048

Date: May 4, 2026